UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTURO MARCELINO CASTILLO, BOOKING #92864-298,<br><br>                            Plaintiff,<br><br>vs.<br><br>JOHN DOES 1-300 and USA,<br><br>                            Defendants. | Case No.: 24-cv-1017-BTM-DEB<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS,**<br><br>**(2) DISMISSING DOE DEFENDANTS PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b), and**<br><br>**(3) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF COMPLAINT AND SUMMONS ON DEFENDANT USA PURSUANT TO 28 U.S.C. § 1915(d) & Fed. R. Civ. P. 4(c)(3)** |

      Plaintiff Arturo Marcelino Castillo, an inmate at the Federal Correctional Institution in Fairton, New Jersey, is proceeding pro se in this civil action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and the Federal Tort Claims Act ("FTCA"). (ECF No. 1.) Plaintiff claims that while housed as a pretrial detainee at the Metropolitan Correctional Center ("MCC") in San Diego,

1

California, he was assaulted by inmates due the denial of his request to be housed in protective custody. (*Id.* at 3–5.) Plaintiff has also filed a Motion to Proceed In Forma Pauperis ("IFP"). (ECF No. 2.)

## I.  Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405, consisting of a $350 statutory fee plus an additional administrative fee of $55, although the administrative fee does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a); Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). A prisoner seeking leave to proceed IFP must submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has insufficient assets. *See* 28 U.S.C. §§ 1915(b)(1), (4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Prisoners who proceed IFP must pay any remaining balance in "increments" or "installments," regardless of whether their action is ultimately dismissed. 28 U.S.C. §§ 1915(b)(1)–(2); *Bruce*, 577 U.S. at 84.

A review of Plaintiff's affidavit of assets shows he had an average monthly balance of $30.46 and average monthly deposits of $134.17 for the 6-months preceding the filing of this action, and an available balance of $0.58. (ECF No. 2, at 4, 6.) The Court **GRANTS** Plaintiff's motion to proceed IFP and declines to assesses the initial partial filing fee of $26.83 because it appears Plaintiff has insufficient funds to pay it. *See Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-

valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.")  The $350 balance of the filing fee required by 28 U.S.C. § 1914 remains due pursuant to the installment payment provisions of 28 U.S.C. § 1915(b)(1).

## II. SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) & 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).  Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").  Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B. Plaintiff's Allegations

Plaintiff alleges that upon his incarceration as a pretrial detainee at MCC in February of 2020, while being classified for housing, he informed Defendants John Doe Security Investigation Services ("SIS") officers that he needed protective custody due to his status

as a prison gang drop out, having renounced his association with the Mexican Mafia. (ECF No. 1, at 3.)  Plaintiff was informed there was no protective custody floor or unit at MCC, and he was housed with active gang members, despite there being a unit at MCC which housed gang dropouts. (Id.)  Plaintiff "fended for [himself] under a different moniker until it was discovered that [he] was a drop-out," at which time he was assaulted, resulting in multiple facial fractures and head trauma and admission to two emergency rooms with lasting injuries and memory impairment.  (Id. at 3.)  He states he was transferred immediately after the incident which delayed his attempts at pursuing remedies, and that other transfers delayed his seeing a specialist for over a year. (Id. at 4–5.)

Plaintiff names as Defendants John Does 1-100 and Jane Does 1-100 SIS officers, John and Jane Does 1-100 officers and staff of the MCC, and the United States of America and its officers and staff in San Diego. (Id. at 2.)  He claims the Doe Defendants breached their duty of care, failed to protect him, and were negligent in violation of the Eighth Amendment, and that the United States of America is liable for their actions under the FTCA, for which he states he has exhausted administrative remedies.  (Id. at 3.)

### C. Failure to protect claim against Doe Defendants

Because Plaintiff indicates he was a pretrial detainee at the time of the events, the Court will construe his failure to protect claim against the Doe Defendants as arising under the Due Process Clause of the Fifth Amendment rather than under the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 536 n.16 (1979) ("Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment."); *see also City of Revere v. Massachusetts Gen. Hospital*, 463 U.S. 239, 244 (1983) ("due process rights" of an unconvicted person "are at least as great as the Eighth Amendment protections available to a convicted prisoner.")

The Supreme Court in *Bivens* recognized an implied cause of action against federal officials for a Fourth Amendment search and seizure violation. *Bivens*, 403 U.S. at 392–97.  However, "since then, the Supreme Court has extended *Bivens* exactly twice,"

including *Davis v. Passman*, 442 U.S. 228 (1979), where the Court permitted a damages remedy against a congressman for alleged sex discrimination in violation of the Fifth Amendment, and *Carlson v. Green*, 446 U.S. 14 (1980), where the Court recognized a *Bivens* remedy where prison officials failed to provide adequate medical treatment in violation of the Eighth Amendment. *Marquez v. Rodriguez*, 81 F.4th 1027, 1029 (9th Cir. 2023). Thus, when a plaintiff seeks to bring an action under *Bivens* for a violation of a federal constitutional right:

> [W]e proceed in two steps. "First, we ask whether the case presents 'a new *Bivens* context'—i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 139-40 (2017). If a case presents a new *Bivens* context, then we examine whether "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id*. (quoting *Abbasi*, 582 U.S. at 136). These steps will "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id*. If so, then we may not allow the *Bivens* claim to proceed. [¶] In practice, the Supreme Court's stringent test will foreclose relief in all but the most extraordinary cases.

*Marquez*, 81 F.4th at 1030.

In *Marquez*, the Ninth Circuit held that a pre-trial detainee at MCC who alleged MCC officers failed to protect him from assault by other inmates when he asked for and was denied protective custody due to the sexual nature of the inmate's criminal charges (rather than former gang membership as here), was seeking to extend *Bivens* to a new context. Id. at 1030–32. The court went on to examine whether special factors exist which counsel against allowing a *Bivens* claim in that context to proceed, noting that "(i)f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." Id. at 1032, quoting *Egbert*, 596 U.S. at 491. The court determined the inmate had alternative remedies available, such as challenging his placement in general population through the administrative review procedures offered by the Board of Prisons, or by bringing an action for declaratory or injunctive relief rather

than for damages under *Bivens*. Id. at 1033. The Ninth Circuit thus "decline[d] to extend a *Bivens* action to include a Fifth Amendment failure to protect claim." Id. at 1028.

Here, as with the plaintiff in *Marquez*, Plaintiff also seeks to bring a Fifth Amendment failure to protect claim against MCC officers for their failure to place him in protective custody upon his arrival despite his having informed them of his need for protective custody. Under *Marquez*, Plaintiff is foreclosed from bringing such an action against the individual Doe Defendants.

Accordingly, the Court *sua sponte* dismisses the Fifth Amendment *Bivens* failure to protect claim against the Doe Defendants for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2) & 1915A(b); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121. Because it is clear Plaintiff cannot state a *Bivens* claim, the dismissal is without leave to amend. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)); *United States ex rel. Insoon Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) ("Futility of amendment can, by itself, justify the denial of . . . leave to amend.")

**D.  FTCA claim**

Plaintiff also seeks to hold Defendant United States of America liable for the intentional and negligent actions of the MCC staff which resulted in his assault. The FTCA waives sovereign immunity for claims arising out of common law torts committed by federal employees, and "authorizes private tort actions against the United States 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *U.S. v. Olson*, 546 U.S. 43, 44 (2005) (quoting 28 U.S.C. § 1346(b)(1)).

However, the FTCA includes a discretionary function exception which precludes claims against the United States "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an

employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception covers only acts that are discretionary in nature, and "conduct cannot be discretionary unless it involves an element of judgment or choice." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988). "Because the purpose of the exception is to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort . . . when properly construed, the exception 'protects only governmental actions and decisions based on considerations of public policy.'" *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984) and *Berkovitz*, 486 U.S. at 537).

Courts have applied the discretionary function exception to the operation of prisons, including the protection, housing, and classification of prisoners. *Alfrey v. United States*, 276 F.3d 557, 564–65 (9th Cir. 2002) (exception applied where federal prison officials had discretion on how to respond to threats which discretion was presumed to be grounded in policy considerations); *Gladney v. United States*, 858 F.App'x 221, 224 (9th Cir. 2021), *cert. denied*, 142 S.Ct. 909 (2022) (prison's "choices about how to monitor prisoners" to prevent abuse or assault is "the type of policy judgment protected by the discretionary-function exception"); *McRae v. United States*, 812 F.App'x 505, 505 (9th Cir. 2020) ("a prison official's judgment concerning what steps to take in response to a threat" falls within exception to FTCA); *Merz v. United States*, 532 F.App'x 677, 678 (9th Cir. 2013) (no subject matter jurisdiction for claim against prison "based on the decision to place [plaintiff] in a cell with another inmate who subsequently attacked him").

Nevertheless, the Ninth Circuit has left open the possibility "that the 'negligent guard theory' is valid in our circuit," referring to a negligent abdication of a duty of care. *See Gladney*, 858 F.App'x at 224 (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475–76 (2d Cir. 2006)); *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (holding that where procedures were in place to prevent an injury but were negligently overlooked, a negligent guard theory would not fall under the discretionary function

exception because "[s]uch negligent acts neither involve an element of judgment or choice within the meaning of *Gaubert* nor are grounded in considerations of governmental policy").

Under a liberal construction of the Complaint, Plaintiff alleges that after he requested protective custody due to his status as a gang dropout he was informed by MCC staff that there was no protective custody floor or unit at MCC, and he was housed with active gang members despite the existence of a unit at MCC housing gang dropouts due to staff's negligence or ignorance in failing to know Plaintiff could have been housed in the gang dropout unit. (ECF No. 1, at 3.) In light of the Ninth Circuit's recognition that it is an open question whether such an alleged negligent failure to be aware that Plaintiff could have been housed in the gang dropout unit at MCC falls outside the discretionary function exception, *Gladney*, 858 F.App'x at 224, and in light of the "low threshold for proceeding past the screening stage" under 28 U.S.C. §1915A(b), *Wilhelm*, 680 F.3d at 1123, Plaintiff is entitled to have the U.S. Marshal effect service of the summons and Complaint against Defendant United States of America as to his FTCA claim. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.")

### III.   Conclusion and Orders

Good cause appearing, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2).

2. **DIRECTS** the Warden of the Federal Correctional Institution in Fairton, New Jersey, to collect from Plaintiff's prison trust account the $350 filing fee by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court when the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

  3. **DISMISSES** all claims against the Doe Defendants in the Complaint without leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) & 1915A(b).

  4. **DIRECTS** the Clerk of the Court to issue a summons as to Plaintiff's Complaint (ECF No. 1) upon Defendant the United States of America and forward it to Plaintiff.  Because Plaintiff is suing the United States, he must serve Defendant in accordance with Rule 4(i).  *See* Fed. R. Civ. P. 4(i)(1).  The Clerk is hereby directed to include in Plaintiff's IFP package two separate copies of this Order, Plaintiff's Complaint, the summons, and two blank USM Form 285s for Plaintiff's use in serving the United States via the United States Attorney for the Southern District of California and the Attorney General of the United States in Washington, D.C.  *See* Fed. R. Civ. P. 4(i)(1)(A)-(B).  Upon receipt of this "IFP Package," Plaintiff must complete the Form 285s as completely and accurately as possible, *include addresses where the Defendant may be served*, *see* S.D. Cal. CivLR 4.1.c, and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

  5. **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon Defendant United States of America as directed by Plaintiff on the USM Form 285.  Costs of service will be advanced by the United States.  *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

  6. **ORDERS** Defendant, once served, to reply to Plaintiff's Complaint and any subsequent pleading Plaintiff files in this matter in which Defendant is named as a party within the time provided by the applicable provisions of Federal Rules of Civil Procedure 12(a) and 15(a)(3).  *See* 42 U.S.C. § 1997e(g)(2) (while Defendants may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its *sua sponte* screening Defendants are required to respond).

  7. **ORDERS** Plaintiff, after service has been made by the U.S. Marshal, to serve upon Defendant, or if appearance has been entered by counsel, upon Defendant's counsel, a copy of every further pleading, motion, or other document submitted for the Court's

consideration pursuant to Fed. R. Civ. P. 5(b).  Plaintiff must include with every original document sought to be filed with the Clerk, a certificate stating the manner in which a true and correct copy of that document has been served on Defendant or their counsel, and the date of that service.  *See* S.D. Cal. CivLR 5.2.  Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon a Defendant, or their counsel, may be disregarded.

**IT IS SO ORDERED.**

Dated: October 10, 2024

Hon. Barry Ted Moskowitz
United States District Judge